# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | |
|---|---|
| Valerie C. Schmitz, individually and as Personal Representative of the ESTATE OF DAVID J. SCHMITZ, deceased, | Civil Action No. 3:22-cv-02419-MGL |
| Plaintiffs, | |
| vs. | **DEFENDANT ROCKWELL COLLINS, INC.'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT AND AFFIRMATIVE DEFENSES** |
| LOCKHEED MARTIN CORPORATION; ROCKWELL COLLINS, INC.; TELEDYNE RISI, INC., d/b/a/ TELEDYNE ELECTRONIC SAFETY PRODUCTS; AND TELEDYNE RISI, INC., d/b/a TELEDYNE ENERGETICS, | |
| Defendants | |

NOW COMES the defendant, ROCKWELL COLLINS, INC. (hereinafter, "Collins"), by and through its attorneys, SMITH, ROBINSON, HOLLER, MORGAN & DUBOSE LLC, and FITZPATRICK & HUNT, PAGANO, AUBERT, LLP, and for its ANSWER AND AFFIRMATIVE DEFENSES to the Plaintiff's Second Amended Complaint, states as follows:

1.    The Plaintiff, Valerie C. Schmitz, was the lawful wife of David J. Schmitz and is the duly appointed Personal Representative of the Estate of the David J. Schmitz by the Sumter County Probate Court on August 17, 2020.  At the time of the aircraft crash at issue herein, which took the life of her husband, Plaintiff Valerie C. Schmitz lived with her husband David J. Schmitz, in Sumter County, South Carolina.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 1 and on that basis denies same.

1

2.    Defendant Lockheed Martin is incorporated under the laws of the state of Maryland, and its principal office is located in Bethesda, Maryland.  Lockheed owns property in, and operates in South Carolina, namely a large aircraft manufacturing plant  in Greenville, South Carolina, where it manufactures F-16 aircraft.  This is the type of aircraft involved in this crash.

**ANSWER:**  Collins lacks sufficient information to either admit or deny the allegations

of Paragraph 2 and on that basis denies same.

3.    Defendant Rockwell Collins, Inc. is incorporated under the laws of the state of Delaware, with its principal pace of business located in Cedar Rapids, Iowa. Rockwell Collins manufactures components of aircraft ejection systems including the system which is the subject of this lawsuit. Defendant does substantial business in this district and manufactured and provided components to the ejection system which is the subject of this lawsuit.

**ANSWER:**    Collins admits that it is incorporated under the laws of the state of

Delaware and maintains its principal pace of business located in Cedar Rapids, Iowa. Collins

further admits that it manufactures certain components of aircraft ejection systems and

manufactured and provided components to the ejection system which is the subject of this

lawsuit. Collins does not know which "system" Plaintiff claims to be the subject of this lawsuit

and therefore lacks sufficient information to either admit or deny that it manufactured the

system; to the extent that a response is required from Collins, the remaining allegations of

Paragraph 3 are denied.   Collins denies that there was any manufacturing or design activities

in Cedar Rapids, Iowa for the ACES II ejection seat.

4.    Defendant Teledyne Risi, Inc. is incorporated under the laws of the state of California, with its principal pace of business located in Chatsworth, CA. Risi Defendant does substantial business in this district and designed, manufactured and provided components to the ejection system which is the subject of this lawsuit.

**ANSWER:**  Collins lacks sufficient information to either admit or deny the allegations

of Paragraph 4 and on that basis denies same.

5.    The Court has original subject matter jurisdiction of this matter pursuant to Article I, § 8, cl. 17 of the U.S. Constitution, as part of this cause of action occurred in a federal enclave, namely Shaw Air Force Base, Sumter South Carolina. (*See Willis v. Craig*, (9th Cir. 1977) 555 F.2d 724, 726;  *Celli v. Shoell* (10th Cir. 1994) 40 F.3d 324, 328).  In the alternative,

2

this Court also has jurisdiction pursuant to 18 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs is between citizens of different states.

**ANSWER:** Paragraph 5 calls for Collins to admit or deny a legal conclusion for which

no response is required. To the extent that a response is required, Collins admits the allegations

of Paragraph 5.

6.    Venue is based on 28 U.S.C. 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this judicial district, and each Defendant is subject to the personal and/or general jurisdiction of the Court.

**ANSWER:** Paragraph 6 calls for Collins to admit or deny a legal conclusion for which

no response is required. To the extent that a response is required, Collins admits the allegations

of Paragraph 6.

7.    This action is brought by the Plaintiff for the death of her husband, First Lieutenant (1st Lt) David J. Schmitz, United States Air Force (USAF), who on June 30, 2020, suffered grievous injuries and ultimately was killed when he ejected from his stricken F-16 "Fighting Falcon" (hereinafter "F-16") fighter jet, but his Advanced Concept Ejection Seat (hereinafter "ACES II") failed to function as designed when its Digital Recovery Sequencer (hereinafter "DRS") malfunctioned, and his ejection seat parachute failed to deploy.

**ANSWER:** Collins admits Plaintiff brings this action for the death of her husband in a

June 30, 2020, accident involving the ejection from a F-16 aircraft. Collins lacks sufficient

information to either admit or deny the remaining allegations of Paragraph 7 and on that basis

denies same.

8.    Approximately seven seconds after initiating ejection, 1st Lt David J. Schmitz was injured and thereafter died from his injuries when he slammed into the ground while still strapped into his ejection seat.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the

allegations of Paragraph 8 and on that basis denies same.

9.    1st Lt David J. Schmitz's injuries occurred in the air over Shaw Air Force Base during the ejection sequence and upon impact with the ground and his death occurred in an area adjacent to a taxiway at Shaw Air Force Base (AFB), which is near Sumter, South Carolina.

**ANSWER:** Upon information and belief, Collins admits that Lt. Schmitz died in an accident that occurred on the grounds of Shaw AFB, which is near Sumter, S.C. Collins lacks sufficient information to either admit or deny the remaining allegations of Paragraph 9 and on that basis denies same.

10.    At the time of his death, 1st Lt David J. Schmitz was on active duty in the USAF and was the sole occupant of his F-16 and was acting as pilot-in-command at the time of the ejection seat malfunction.

**ANSWER:** Upon information and belief, Collins admits the allegations of Paragraph 10.

11.    At all relevant times alleged herein, 1st Lt David J. Schmitz was stationed in the State of State of South Carolina at Shaw AFB.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 12 and on that basis denies same.

12.    At all relevant times alleged herein, Plaintiff Valerie C. Schmitz was the wife of 1st Lt David J. Schmitz.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 12 and on that basis denies same.

13.    The F-16 "Fighting Falcon" is a single-engine multirole fighter aircraft originally developed by General Dynamics for the USAF.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 13 and on that basis denies same.

14.    In 1993, General Dynamics sold its aircraft manufacturing business to LOCKHEED.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 14 and on that basis denies same.

15.     The aircraft from which 1st Lt David J. Schmitz ejected was an USAF F- 16CM, tail number 94-0043 (hereinafter "ACCIDENT AIRCRAFT"), which was assigned to the 77th Fighter Squadron, 20th Fighter Wing at Shaw AFB in South Carolina.

**ANSWER:** Upon information and belief, Collins admits that Lt. Schmitz ejected from an USAF F-16CM, tail number 94-0043. Collins lacks sufficient information to either admit or deny the remaining allegations of Paragraph 15 and on that basis denies same.

16.     Defendant LOCKHEED currently designs, manufactures, tests, markets, and sells the F-16 aircraft from manufacturing facilities in the State of South Carolina.

**ANSWER:** Collins admits that Lockheed sells the F-16 aircraft. Collins lacks sufficient information to either admit or deny the remaining allegations of Paragraph 16 and on that basis denies same.

17.     As the manufacturer of F-16 aircraft, Defendant LOCKHEED owes the highest degree of care to all pilots who fly F-16 aircraft to design, manufacture, assemble, integrate, inspect, test, service, repair and modify F-16 aircraft with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind, including injury as a result of patent and latent defects posed by improper design, assembly, integration, manufacture, inspection, quality assurance, testing, servicing, repairs, modifications of F-16 aircraft and its component parts.

**ANSWER:** The allegations of Paragraph 17 are not directed to Collins and, as such, no response from Collins is required. To the extent that a response is required from Collins, Collins lacks sufficient information to either admit or deny the allegations of Paragraph 17 and on that basis denies same.

18.     Defendant LOCKHEED is a Maryland corporation doing business in the State of South Carolina.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 18 and on that basis denies same.

19.     Defendant LOCKHEED provides F-16 aircraft parts to United States Air Force (USAF) units at Shaw Air Force Base (AFB) located within Sumter County.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 19 and on that basis denies same.

20.    Defendant LOCKHEED provides Contract Instructor Pilots (CIPs) for military pilot training in the state of South Carolina; provides contract maintenance personnel for the maintenance and servicing of military aircraft located in the state of South Carolina; provides simulators and simulator support for military pilot training in the state of South Carolina; and owns property in the state of South Carolina.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 20 and on that basis denies same.

21.    Defendant LOCKHEED is registered with the South Carolina Secretary of State and maintains a registered agent in the State of South Carolina.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 21 and on that basis denies same.

22.    Defendant COLLINS designed, manufactured, tested, marketed, and sold the ACES II ejection seat system.

**ANSWER:**  Collins admits that it manufactured and tested portions of the ACES II ejection seat system and that it sold the ACES II ejection seat system. Collins denies the remaining allegations of Paragraph 22.

23.    As the manufacturer of the ACES II ejection seat, Defendant COLLINS owes the highest degree of care to all pilots who fly in the ACES II ejection seat, and to design, manufacture, assemble, integrate, inspect, test, service, repair and modify ACES II ejection seats with the highest degree of care to exercise the highest degree of care to prevent injury of any kind, including injury as a result of patent and latent defects posed by improper design, assembly, integration, manufacture, inspection, quality assurance, testing, servicing, repairs, modifications of the ACES II ejection seat or its component parts.

**ANSWER:**    The allegations of Paragraph 23 call for legal conclusions regarding the duties that Collins owes regarding the design, manufacture, assembly, integration, testing, repair and modification of the ACES II ejection seats, to which no response is required. To the extent that a response is  required from Collins, the allegations of Paragraph 23 are denied.

24.    COLLINS (also sometimes known as and referred to as Rockwell Collins) is registered with the South Carolina Secretary of State and maintains a registered agent in the State of South Carolina.

**ANSWER:**    Collins admits the allegations of Paragraph 24.

25.    Defendants RISI designed, manufactured, tested, marketed, and sold the Digital Recovery Sequencer (DRS).

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations

of Paragraph 25 and on that basis denies same.

26.    As the manufacturer of the DRS, Defendant RISI owe [sic] the highest degree of care to all pilots who fly in the ACES II ejection seat to design, manufacture, assemble, integrate, inspect, test, service, repair and modify DRS units with the highest degree of care, and to exercise the highest degree of care to prevent injury of any kind, including injury as a result of patent and latent defects posed by improper design, assembly, integration, manufacture, inspection, quality assurance, testing, servicing, repairs, modifications of the DRS and its component parts.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations

of Paragraph 26; to the extent that a response is required from Collins, the allegations of

Paragraph 26 are denied.

27.    During a normal ACES II ejection sequence, the DRS controls the sequential firing of cartridge actuated devices (CAD) responsible for providing ejection seat stabilization, pilot and ejection seat separation, and parachute deployment.

**ANSWER:**    Collins admits the allegations of Paragraph 27.

28.    The USAF determined the DRS in 1st Lt David J. Schmitz's ejection seat malfunctioned, which caused him to remain strapped in his ejection seat without a parachute, and consequently, slam into the ground.

**ANSWER:**    Collins admits that the USAF determined that the DRS in 1st Lt. David

J. Schmitz's ejection seat did not operate as intended and that Lt. Schmitz remained strapped

in his ejection seat and impacted the ground after ejection.   Collins denies the remaining

allegations of Paragraph 28.

29.    The USAF set the DRS's system reliability requirement at 0.999%; however, according to an open source undated PowerPoint presentation (estimated to be produced by the USAF in the Spring of 2017) the Program Manager for the Munitions Sustainment Division at Hill AFB, Utah, which is the Division responsible for management of the ACES II ejection

seat, wrote that historical data showed DRS units had an observed failure rate of 0.056%.

**ANSWER:** Collins admits that the Joint Program Office at Hill Air Force Base set the DRS's system reliability requirement at 0.999%. Collins lacks sufficient information to either admit or deny the remaining allegations of Paragraph 29 and on that basis denies same.

30.    To improve the reliability of the DRS, and reduce the failure rate, the USAF approved Time Compliance Technical Order (TCTO) 11P2-3-502, *Installation of Shorting Plug on DRS Electronic Module.*

**ANSWER:** Collins admits that the "Time Compliance Technical Order (TCTO) 11P2-3-502, *Installation of Shorting Plug on the DRS Electronic Module*," was issued on 20 January 2016.  Collins lacks sufficient information to either admit or deny the allegations of Paragraph 30 and on that basis denies same.

31.    TCTO 11P2-3-502 modified the wire connections between the ACES II ejection seat and the DRS which was a modification designed to prevent noise bias issues that had been observed in channel #3 of the DRS's 3-channel system.

**ANSWER:** Collins admits that TCTO 11P2-3-502 modified required installation of a shortening plug to alleviate noise bias that had been observed in channel number three of the DRS's 3-channel system.

32.    LOCKHEED employs an "F-16 Escape & Life Support Product Lead" who coordinates with COLLINS and/or TELEDYNE and serves as LOCKHEED's subject matter expert regarding the ACES II ejection seat installed in the F-16.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 32 and on that basis denies same.

33.    LOCKHEED employs an "F-16 Flight Manual Manager" who is responsible for documenting and illustrating ACES II ejection seat components and describing the ACES II ejection seat function and operation in the F-16 pilot flight manual.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 33 and on that basis denies same.

34.    Upon information or belief, LOCKHEED, COLLINS and RISI were involved in developing TCTO 11P2-3-502, and were involved in the design and modification of the wire connections between the ACES II ejection seat and the DRS.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 34 and on that basis denies same.

35.    Upon information or belief, LOCKHEED, COLLINS and RISI were aware, or should have been aware of the unreliability of DRS units prior to 1st Lt David J. Schmitz's ejection and subsequent death.

**ANSWER:**    Collins denies the allegations of Paragraph 35 as directed to Collins. The remaining allegations of Paragraph 35 are not directed to Collins and no response from Collins is required. To the extent that a response is required from Collins, the remaining allegations of Paragraph 35 are denied.

36.    The TCTO 11P2-3-502 kits used by the USAF were provided at no cost to the U.S. Government.

**ANSWER:**  Collins admits that it received Shorting Plug Kits (PN 1847-212-01) in support of TCTO 11P2-3-502 from RISI at no cost, which Collins in turn sent to the U.S. Government at no cost. Except as expressly admitted, the allegations of Paragraph 36 are denied.

37.    Upon information or belief, the TCTO 11P2-3-502 kits were provided at no cost to the U.S. Government because LOCKHEED, COLLINS and RISI acknowledged the DRS's original design did not meet U.S. Government or USAF contract specifications.

**ANSWER:** Collins admits that Collins received Shorting Plug Kits (PN 1847-212-01) in support of TCTO 11P2-3-502 from RISI at no cost, which Collins in turn sent to the U.S. Government at no cost. Except as expressly admitted, the allegations of Paragraph 37 are denied.

38.     1st Lt David J. Schmitz's ejection seat did not have TCTO 11P2-3-502 incorporated at the time of his ejection.

**ANSWER:**    Upon information and belief, Collins admits the allegations of Paragraph 38.

39.     In 2012, the USAF Safety Center recommended that the DRS be replaced with a more reliable component.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 39 and on that basis denies same.

40.     Due to administrative/legal delays concerning Government Use data rights and late acquisition of parts from sub-tier suppliers, a replacement for the DRS was delayed, and the USAF was forced to extend the service life of DRS units already installed in ejection seats.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 40 and on that basis denies same.

41.     Due to concerns about the reliability of DRS units already installed in the ACES II ejection seats with and without TCTO 11P2-3-502 incorporated, the USAF conducted "quality evaluation testing" in December 2017 on 30 DRS units that had exceeded their 10-year service life and conducted further testing on 30 additional DRS units in August of 2018.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 41 and on that basis denies same.

42.     RISI designed, manufactured, and supplied to the USAF a "portable functional test set", which was used to conduct the "quality evaluation testing" of the DRS units in December 2017 and August 2018.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 42 and on that basis denies same.

43.     Upon information or belief, LOCKHEED, and/or RISI and/or COLLINS collectively or independently conducted the DRS "quality evaluation testing" or provided personnel to assist or advise the USAF during the DRS "quality evaluation testing" in December 2017 and August 2018.

**ANSWER:** Collins denies that it performed DRS "quality evaluation testing" or provided personnel to assist or advise the USAF during DRS "quality evaluation testing" in December 2017 and August 2018. Collins lacks sufficient information to either admit or deny the remaining allegations of Paragraph 43 and on that basis denies same.

44.     Quality evaluation testing of the 60 DRS in 2017 and 2018 discovered that 3 of the 60 DRS units had abnormalities.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 44 and on that basis denies same.

45.     The 3 DRS units with abnormalities were sent to RISI for further evaluation and testing.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 45 and on that basis denies same.

46.     After further evaluation and testing, RISI indicated that of the 3 DRS units that had abnormalities, 2 units would have functioned normally during an ejection.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 46 and on that basis denies same.

47.     Although approximately two years had elapsed between RISI's 2018 evaluation/testing and 1st Lt David J. Schmitz's June 2020 ejection, at the time of 1st Lt David J. Schmitz ejection, RISI and TELEDYNE had not issued a determination regarding the 3rd DRS unit.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 47 and on that basis denies same.

48.     Upon information or belief, LOCKHEED, COLLINS and RISI withheld information related to the 3rd DRS because had the data been released it would have served to reduce the overall reliability of the DRS required by the U.S. Government and the USAF in its specifications, standards and contracts.

**ANSWER:** Collins denies the allegations of Paragraph 48 as directed to Collins. The remaining allegations of Paragraph 48 are not directed to Collins and no response from Collins

is required. To the extent that a response is required from Collins, the remaining allegations of Paragraph 48 are denied.

49.    The USAF relied on the data collected during the 2017 and 2018 quality evaluation testing of the DRS units when the USAF decided to extend the service life of the DRS installed in 1st Lt David J. Schmitz's ejection seat.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 49 and on that basis denies same.

50.    The USAF relied on the data collected during RISI's evaluation and testing of the abnormal 3 DRS units when the USAF decided to extend the service life of the DRS installed in 1st Lt David J. Schmitz's ejection seat.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 50 and on that basis denies same.

51.    Research from the USAF's 2020 Aircraft Accident Investigation Board (AIB), which investigated 1st Lt David J. Schmitz's ejection seat malfunction and subsequent death, found that malfunctioning DRS units had been observed in approximately 9% of all actual aircraft ejections and ground sled testing.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the accuracy of the data in the AIB report and on that basis denies same.

52.     The USAF AIB's discovered 9% DRS failure rate is significantly greater than what was observed during the 2017 and 2018 DRS quality evaluation testing.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 52 and on that basis denies same.

53.    As of June 13, 2022, RISI's website still indicated the DRS has a "system reliability" of >.999 (http://teledynesafetyproducts.com/products/drc.asp).

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 53 and on that basis denies same.

54.    After 1st Lt David J. Schmitz's death, the USAF Research Laboratory determined his malfunctioning DRS contained six suspected counterfeit Metal-Oxide-Semiconductor Field-Effect Transistors (MOSFET), three suspected counterfeit serial flash

12

memory chips, and a suspected counterfeit parallel flash memory chip.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 54 and on that basis denies same.

55.    After 1st Lt David J. Schmitz ejection and death, the DRS in his ejection seat was sent to TELEDYNE for further in-depth analysis and download of internal memory.

**ANSWER:**    Upon information and belief, Collins admits that the DRS was sent to Teledyne as part of the post-accident investigation. Collins lacks sufficient information to either admit or deny the remaining allegations of Paragraph 55 and on that basis denies same.

56.    The accident DRS was Part Number 10002109-503, Serial Number 2538.

**ANSWER:**    Collins admits the allegations of Paragraph 56.

57.    When the Air Force Research Laboratory (AFRL) received the accident DRS for its independent inspection, AFRL discovered TELEDYNE had removed the printed wiring board (PWB) from the DRS housing and had mounted the PWB to a "test fixture".

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 57 and on that basis denies same.

58.    AFRL did not receive the accident DRS housing from RISI.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 58 and on that basis denies same.

59.    AFRL discovered that RISI had removed and replaced 3 serial flash memory chips on the accident DRS PWB.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 59 and on that basis denies same.

60.    AFRL discovered that RISI had removed and replaced Channel #2's parallel flash memory chip on the accident DRS PWB.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 60; to the extent that a response is required from Collins, the allegations of Paragraph

60 are denied.

61.     AFRL discovered that RISI had cut the leads on Channel #2's parallel flash memory chip to facilitate chip removal from the accident DRS.

**ANSWER:**     Collins lacks sufficient information to either admit or deny the allegations of Paragraph 61 and on that basis denies same.

62.     AFRL discovered that RISI and TELEDYNE had removed and replaced the X-Y Accelerometer chip on the accident DRS PWB.

**ANSWER:**     Collins lacks sufficient information to either admit or deny the allegations of Paragraph 62 and on that basis denies same.

63.     AFRL noted that both the original accident X-Y Accelerometer chip and the replacement X-Y Accelerometer chip were suspected of being counterfeit.

**ANSWER:**     Collins lacks sufficient information to either admit or deny the allegations of Paragraph 63 and on that basis denies same.

64.     AFRL discovered that six MOSFETs on the accident DRS PWB had no conformal coating, were heavily gouged, had arcing scratch marks, were considered obsolete, and were suspected of being counterfeit.

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 64 and on that basis denies same.

65.     AFRL discovered that a capacitor was partially dislodged from its solder pads and hypothesized that it was damaged during the removal or installation of the PWB.

**ANSWER:**     Collins lacks sufficient information to either admit or deny the allegations of Paragraph 65 and on that basis denies same.

66.     Upon information or belief, by removing and replacing three serial flash memory chips, a parallel flash memory chip, and a dual axis accelerometer chip on the accident DRS PWB, RISI's actions constituted Spoliation.

**ANSWER:**     The allegations of Paragraph 66 are not directed to Collins and, as such, no response from Collins is required. To the extent that a response is required from Collins, Collins lacks sufficient information to either admit or deny the allegations of Paragraph 66 and on that

14

basis denies same.

67.    Upon information or belief, by damaging the leads on the parallel flash memory chip during removal from the PWB, RISI's actions constituted Spoliation.

**ANSWER:**    The allegations of Paragraph 67 are not directed to Collins and, as such, no response from Collins is required. To the extent that a response is required from Collins, Collins lacks sufficient information to either admit or deny the allegations of Paragraph 67 and on that basis denies same.

68.    Upon information or belief, by dislodging and damaging the C262 capacitor during removal or installation from the PWB, RISI and TELEDYNE's actions constituted Spoliation.

**ANSWER:**    The allegations of Paragraph 68 are not directed to Collins and, as such, no response from Collins is required. To the extent that a response is required from Collins, Collins lacks sufficient information to either admit or deny the allegations of Paragraph 68 and on that basis denies same.

69.    The USAF Research Laboratory determined that counterfeit parts may have contributed to 1st Lt David J. Schmitz's DRS malfunction.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 69 and on that basis denies same.

70.    Upon information or belief, LOCKHEED, COLLINS and RISI were aware, or should have been aware DRS units contained counterfeit parts.

**ANSWER:**    Collins denies that it either was or should have been aware that DRS units manufactured by others contained counterfeit parts, if any. Collins lacks sufficient information to either admit or deny whether Lockheed or Risi were aware or should have been aware that DRS units contained counterfeit parts and, on that basis, denies same.

71.    The USAF determined that after 1st Lt David J. Schmitz initiated his ejection, he was propelled approximately 130 feet into the air, and a full 6.5 – 7.0 seconds elapsed before he slammed into the ground.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 71 and on that basis denies same.

72.    After initiating ejection from his stricken F-16, 1st Lt David J. Schmitz suffered pre-impact physical injury, physical pain and suffering, fright, terror, and mental and emotional pain and suffering prior to impact with the ground.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 72 and on that basis denies same.

73.    1st Lt David J. Schmitz is survived by his wife, Valerie C. Schmitz.

**ANSWER:**    Upon information and belief, Collins admits the allegations of Paragraph 73.

74.    None of the aforesaid damages and injuries would have been sustained by the Plaintiff and her deceased husband including prior to his death but for the acts and omissions of the Defendants.

**ANSWER:**    Collins denies the allegations of Paragraph 74.

75.    The acts and omissions complained of herein occurred in the County of Sumter, State of South Carolina.

**ANSWER:**    Collins admits only that the accident that gave rise to this litigation occurred in in the County of Sumter, state of South Carolina. Collins lacks sufficient information to either admit or deny where the "acts or omissions complained of" in the Plaintiff's complaint occurred and, on that basis, denies the remaining allegations of Paragraph 75.

76.    South Carolina Code §15-73-10, among others, applies to this action for claims concerning defective products, manufacturing defects, and marketing defects. The product defects were the direct and proximate legal and factual causes of the injuries sustained. The Plaintiff and the Plaintiff's Decedent did not discover the defects and were unaware of the dangers.

**ANSWER:**    Paragraph 76 calls for Collins to admit or deny a legal conclusion regarding application of South Carolina Code §15-73-10, for which no response is required. To the extent that a response is required, Collins denies the allegations of Paragraph 76. Collins further denies that "product defects were the direct and proximate legal and factual

16

causes of the injuries sustained," and that "the Plaintiff and the Plaintiff's Decedent did not discover the defects and were unaware of the dangers."

### COUNT I
### STRICT LIABILITY
### (LOCKHEED)

The allegations of Count I, paragraphs 77- 93, are not directed at Collins; as such Collins does not respond thereto.  To the extent that any response is required from Collins, the allegations of Count I are denied.

### COUNT II
### STRICT LIABILITY
### (COLLINS)

94.    Plaintiffs incorporate by reference paragraphs 1-76 of the Complaint as though set forth herein.

**ANSWER:**    As its response to Paragraph 94, Collins restates its responses to all other paragraphs of the complaint, as though fully set forth herein.

95.    At all relevant times herein, COLLINS was the designer, manufacturer, certificate holder, distributor, seller, modifier, contractor, subcontractor, installer and/or marketers of the ACES II ejection seat, the DRS, and the other components and parts at issue herein.

**ANSWER:**    Collins admits only that it manufactured and sold the ACES II ejection seat pursuant to U.S. Government specifications. Colins denies the remaining allegations of Paragraph 95.

96.    At the time of the crash, the ACES II ejection seat, DRS, and other parts and components, were in substantially the same condition as when they left Defendants' possession.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 96 and, on that basis, denies same.

97.     The aircraft ACES II seat, DRS, and other parts and components, replacement parts, and modifications in question were in a defective condition at the time they left the control of the Defendants.

**ANSWER:**    Collins denies the allegations of Paragraph 97.

98.     At all times relevant, the operators used the ACES II ejection seat, DRS and all other parts and components, in a way that was reasonably foreseeable to COLLINS, and COLLINS maintenance, modifications, design and re-engineering and replacement of the seat parts and components were substantial factors in causing the failure of the ejection seat, DRS and other parts and components, and the injuries and death of Decedent, and damages to Plaintiff.

**ANSWER:**    Collins denies the allegations of Paragraph 98.

99.     At all times relevant, the aircraft, ACES II seat, DRS and other parts and components were unreasonably dangerous due to the design and execution of the aircraft, seat, DRS, modifications and other aircraft and seat component parts and modifications.

**ANSWER:**    Collins denies the allegations of Paragraph 99.

100.     By virtue of the defects and condition of the aircraft, ACES II seat, DRS, parts and components, the risks associated with the design and execution of the modification of the aircraft, seat, DRS, and other aircraft and seat component parts outweighed the benefits due to the likelihood that harm would occur and the existence of alternative and safer designs that were available.

**ANSWER:**    Collins denies the allegations of Paragraph 100.

101.     As designed, manufactured, modified, distributed and sold, the aircraft, ACES II ejection seat, DRS, and other parts and components were dangerous and defective in that they did not perform as expected or required, and did not perform as safely as the user of the products would have expected on the day of the crash.

**ANSWER:**    Collins denies the allegations of Paragraph 101.

102.     The failure of the ACES II seat, DRS and other parts and components to perform safely was a substantial factor in causing the harm to Plaintiff and Plaintiff's Decedent.

**ANSWER:**    Collins denies the allegations of Paragraph 102.

103.     The lack of warnings and instruction were substantial factors in causing the crash and the resulting harm to Plaintiff and Plaintiff's Decedent.

**ANSWER:**    Collins denies the allegations of Paragraph 103.

104.    The ACES II ejection seat, DRS and other parts and components, were dangerous and defective in that the products lacked sufficient warning and instructions for safe use.

ANSWER:    Collins denies the allegations of Paragraph 104.

105.    COLLINS designed, manufactured, modified, distributed and sold the ACES II ejection seat, DRS and other aircraft components and parts with the risks described herein, which were known or knowable by the COLLINS and were within the realm of scientific knowledge distribution and sale of the plane, ejection seat, DRS, modifications, parts and components.

ANSWER:    Collins denies the allegations of Paragraph 105.

106.    The risks associated with the ACES II ejection seat, DRS, parts and components presented a substantial danger to the users, including Plaintiff's Decedent.

ANSWER:    Collins denies the allegations of Paragraph 106.

107.    Ordinary consumers and users of the product, including Plaintiff and Plaintiff's Decedent, would not have recognized, and did not know the potential risks that the ejection seat would fail, and that the DRS would fail to operate or that the component parts would fail and/or were counterfeit.

ANSWER:    Collins denies the allegations of Paragraph 107.

108.    Defendants failed to warn and instruct users of the risks associated with their products.

ANSWER:    Collins denies the allegations of Paragraph 108.

109.    At the time the ACES II ejection seat, components, and parts left the control of COLLINS, a safer alternative design of the product was available and would have prevented or significantly reduced the risk of personal injury or death without substantially impairing the utility of the aircraft, ejection seat and other components and parts. This safer alternative design was both economically and technologically feasible by the application of existing scientific knowledge.

ANSWER:    Collins denies the allegations of Paragraph 109.

110.    As a direct and proximate result of COLLINS' conduct, Plaintiff's Decedent was injured and killed and Plaintiff was harmed and suffered the damages set forth herein.

ANSWER:    Collins denies the allegations of Paragraph 110.

## COUNT III
## STRICT LIABILITY
## (RISI)

The allegations of Count III, paragraphs 110 – 127, are not directed at Collins; as such Collins does not respond thereto.  To the extent that any response is required from Collins, the allegations of Count III are denied.

## COUNT IV
## MISREPRESENTATION/BREACH OF WARRANTIES

128.    Plaintiffs incorporate by reference paragraphs 1-76 of the Complaint as though fully set forth herein.

**ANSWER:**    As its response to Paragraph 128, Collins restates its responses to paragraphs 1-76 of the Complaint as though fully set forth herein.

129.    LOCKHEED expressly and impliedly represented the aircraft, ejection seat, DRS and other parts and components as safe and airworthy.

**ANSWER:**  Collins lacks sufficient information to either admit or deny the allegations of Paragraph 129 and, on that basis, denies same.

130.    COLLINS expressly and impliedly represented the ejection seat, DRS and other parts and components as safe and airworthy.

**ANSWER:** Collins denies that it represents the airworthiness of the ejection seat, DRS or other components. Collins admits only that it represented that the performance and reliability of the ejection seat complied with the U.S. Government, DOD and/or USAF standards and applicable requirements for use in the F-16 aircraft then in effect. Collins denies the remaining allegations of Paragraph 130.

131.    RISI expressly and impliedly represented the ejection seat, DRS and other parts and components as safe and airworthy.

20

**ANSWER:** Collins lacks sufficient information to either admit or deny the allegations of Paragraph 131 and, on that basis, denies same.

132.    Defendants expressly and impliedly represented that the aircraft, ejection seat, DRS, and other components and parts as were assembled in a good and workmanlike manner and that they were fit and safe for the purpose for which same was intended, and that they were not counterfeit.

**ANSWER:** Collins admits only that it represented that the performance and reliability of the ejection seat complied with the U.S. Government, DOD and/or USAF standards and applicable requirements for use in the F-16 aircraft then in effect. Collins denies the remaining allegations of Paragraph 132.

133.    Defendants failed to disclose to Plaintiff's Decedent that the aircraft's ejection seat, DRS and other components and parts were deficient, counterfeit, defective, unapproved and otherwise defective, and that the ejection seat would fail to operate when needed and thus its component parts were defective, counterfeit, and otherwise improper.

**ANSWER:** Collins denies the allegations of Paragraph 133.

134.    At all times relevant herein, Defendants held themselves out to purchasers and consumers of the aircraft ejection seat, DRS and parts and components that the aircraft seat and component parts were fit and safe, and made representations about the aircraft and ejection seat regarding performance and failure rates, and suitability for their intended purposes.

**ANSWER:** Collins admits only that it represented that the performance and reliability of the ejection seat complied with the U.S. Government, DOD and/or USAF standards and applicable requirements for use in the F-16 aircraft then in effect. Collins denies the remaining allegations of Paragraph 134.

135.    In the condition in which the aircraft, seat and parts were delivered to the owners and operators, the aircraft and seat were not suitable for their intended purpose and the Defendants knew or had reason to know of the intended use of the aircraft and ejection seat for a particular purpose.

**ANSWER:** Collins denies the allegations of Paragraph 135.

136.    At the time of purchase of the aircraft, ejection seat, parts, components and modifications, Defendants knew or had reason to know that owners and operators, including Plaintiff's Decedent, would rely on Defendants' skill and judgment to select a product that was

21

suitable for a particular purpose.

     **ANSWER:**    Collins denies the allegations of Paragraph 136.

     137.    Plaintiff's Decedent justifiably relied on Defendants' skill and judgment in making the decision to design, modify, and supply the aircraft ejection seat, parts, components and modifications. With its inherent design, parts and modification defects and lack of adequate warnings and instructions, the product was not suitable for a particular purpose.

     **ANSWER:**    Collins denies the allegations of Paragraph 137.

     138.    As a result of the unsuitability of the product and its failure to meet the intended purpose, Plaintiff's Decedent was harmed, injured and died. Plaintiff was damaged as a result of Defendants' failure to provide a product suitable for the particular purpose.

     **ANSWER:**    Collins denies the allegations of Paragraph 138.

     139.    Defendants expressly represented that the aircraft, ejection seat, parts and components were safe and airworthy, when in fact they were not.

     **ANSWER:**    Collins denies the allegations of Paragraph 139.

     140.    Defendants made assurances that the aircraft, ejection seat, parts and components were safe as designed, modified and manufactured, and work was performed to the highest quality and highest standards.

     **ANSWER:**    Collins admits only that it represented that the performance and reliability of the ejection seat complied with the U.S. Government, DOD and/or USAF standards and applicable requirements for use in the F-16 aircraft then in effect. Collins denies the remaining allegations of Paragraph 140.

     141.    Defendants' failure to deliver the product as expressly and impliedly represented was a substantial factor in causing the injury and death of Decedent, and the harm to Plaintiff and Plaintiff's Decedent.

     **ANSWER:**    Collins denies the allegations of Paragraph 141.

     142.    Defendants breached their implied warranty of merchantability and fitness of purpose by failing to meet acceptable industry and manufacturing standards in the design, construction, and marketing of said aircraft, ejection seat, DRS, parts and components.

     **ANSWER:**    Collins denies the allegations of Paragraph 142.

143.    As a direct and proximate result of Defendants' conduct, Plaintiff's Decedent was injured and killed and Plaintiff was harmed and suffered the damages set forth herein.

**ANSWER:**    Collins denies the allegations of Paragraph 143.

## COUNT V
## FAILURE TO WARN

144.    Plaintiffs incorporate by reference all other paragraphs of the Complaint as though fully set forth herein.

**ANSWER:**    As its response to Paragraph 144, Collins restates its responses to all other paragraphs of the complaint, as though fully set forth herein.

145.    At all relevant times, Defendants negligently failed to warn the public, the maintainers, the pilots, the users, and other intended users and consumers of the F-16, ACES II ejection seat, DRS, and its components and parts were defective, counterfeit, substandard, and could fail without warning.

**ANSWER:**    Collins denies the allegations of Paragraph 145.

146.    At all relevant times, Defendants had knowledge that the subject F-16, ejection seat and DRS, parts, components, manuals, and instructions were defective, dangerous, unsafe, and not airworthy and Defendants had knowledge of these unreasonably unsafe conditions, as well as the magnitude of risk for serious bodily injury and death due to these conditions, and Decedent did not know of or recognize the hidden dangerous and defective conditions.

**ANSWER:**    Collins denies the allegations of Paragraph 146.

147.    Ordinary consumers, including the public, aircraft maintenance personnel, pilots, owners and Decedent herein would not have recognized the potential risks presented by this F-16, ejection seat, DRS, parts, components, manuals and instructions and their unreasonably dangerous and defective conditions.

**ANSWER:**    Collins denies the allegations of Paragraph 147.

148.    Defendants' defects in the design and lack of warnings of the subject ejection seat, DRS, parts, components, manuals and instructions caused the subject accident, which directly, proximately and foreseeably caused the injury, fear of impending and imminent death, conscious suffering, physical injury, pain, and ultimate death of Decedent and injuries and damages to Plaintiff.

**ANSWER:**    Collins denies the allegations of Paragraph 148.

149.    As a direct and proximate result of Defendants' conduct, Plaintiff's Decedent was injured and killed and Plaintiff was harmed and suffered the damages set forth herein.

**ANSWER:**    Collins denies the allegations of Paragraph 149.

## COUNT VI
### Death by Wrongful Act, S.C. Code §15-51-10 by LOCKHEED

Count VI of the Plaintiff's Complaint are not directed against Collins. As such, no response is required from Collins to Paragraphs 150 through 164. To the extent that it is determined that a response is required, Collins denies all such allegations as directed to Collins.

## COUNT VII
### Death by Wrongful Act, S.C. Code §15-51-10 by COLLINS

165.    Paragraphs 1-76, 94-110, and 128-149, of this Complaint are incorporated as if re-alleged herein.

**ANSWER:**    As its response to Paragraph 165, Collins restates its responses to Paragraphs 1-76, 94-110, and 128-149, of this Complaint, as though fully set forth herein.

166.    This cause of action is brought pursuant to Death by Wrongful Act, S.C. Code Section 15-51-10 and the South Carolina Survival Act, S.C. Code Section 15-5-90.

**ANSWER:**    Collins admits only that the Complaint alleges causes of action pursuant to Death by Wrongful Act, S.C. Code Section 15-51-10 and the South Carolina Survival Act, S.C. Code Section 15-5-90. Collins denies liability for all such allegations as set forth herein.

167.    At all times relevant to this action Defendants' agents, contractors, sub-contractors and employees' acts and omissions occurred within the course and scope of their employment with said Defendants.

**ANSWER:**    Collins lacks sufficient information to either admit or deny the allegations of Paragraph 167; to the extent that a response is required from Collins, the allegations of Paragraph 167 are denied.

168.    Upon information and belief, COLLINS served as the "prime contractor" to LOCKHEED, and/or the U.S. Government, for all contractual matters related to designing,

manufacturing, testing, marketing, and selling of the ACES II ejection seat.

**ANSWER:**     Collins admits only that Collins and predecessor corporations manufactured and sold the ACES II ejection seats pursuant to U.S. Government specifications. Collins denies the remaining allegations of Paragraph 168.

169.     Upon information and belief, by designing, manufacturing, testing, marketing, and selling the ACES II ejection seat to LOCKHEED, and/or the U.S. Government, as the prime contractor for the ACES II ejection seat, COLLINS owed a nondiscretionary duty to USAF pilots that fly the F-16, and to the general public, including but not limited to Plaintiff's Decedent, to ensure parts designed, manufactured, supplied, and installed in the ACES II ejection seat by subcontractors, agents and employees met contract specifications and were free of all design defects, manufacturing defects and were not counterfeit.

**ANSWER:**     Paragraph 169 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 169.

170.     Upon information and belief, COLLINS had express contractual and other obligations with LOCKHEED, or the U.S. Government, to ensure parts designed, manufactured, supplied, and installed in the ACES II ejection seat by agents, employees, contractors, and sub-contractors met contract specifications and were free of all design defects, manufacturing defects and were not counterfeit.

**ANSWER:**     Paragraph 170 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law a determined by the court and denies any remaining allegations of Paragraph 170.

171.     Upon information and belief, COLLINS had a duty to adhere to federal law, statues, regulations, ordinances, standards, bid specifications and contracts and other applicable requirements, that require government contractors to ensure parts designed, manufactured, and supplied, and installed by Defendants or by their agents, employees, contractors or sub-contractors met all contract specifications and were free of all design defects, manufacturing defects and were not counterfeit.

**ANSWER:** Paragraph 171 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 171.

172.    Upon information and belief, COLLINS had a duty to adhere to quality control and quality assurance standards set forth in its contract with LOCKHEED, and/or the U.S. Government regarding the ACES II ejection seat.

**ANSWER:** Paragraph 172 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law and/or contract(s) as determined by the court and denies any remaining allegations of Paragraph 172.

173.    Upon information and belief, COLLINS had a duty to adhere to industry standards regarding quality control and quality assurance standards to ensure parts designed, manufactured, and installed by COLLINS or its agents, employees, contractors or sub-contractors met specifications and were free of all design defects, manufacturing defects and were not counterfeit.

**ANSWER:** Paragraph 173 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 173.

174.    Upon information and belief, COLLINS had a duty to provide to the USAF all data in its possession regarding the unreliability of the ACES II ejection seat, so that the USAF could make informed decisions about DRS life cycle extensions.

**ANSWER:** Paragraph 174 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 174.

175.    Upon information and belief, COLLINS had a duty to inform the USAF that the ACES II ejection seat contained counterfeit parts, so that the USAF could make informed decisions about DRS life cycle extensions.

**ANSWER:**    Paragraph 175 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 175. Subject to and without waiving the foregoing, Collins states that is unaware of any counterfeit parts in the ACES II ejection seat or any component thereof.

176.    At all times material hereto, COLLINS had a duty to warn both the USAF and pilots that flew the F-16 of the installation of counterfeit parts, and of defects in the ACES II ejection seat, DRS or other components.

**ANSWER:**    Paragraph 176 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 176. Subject to and without waiving the foregoing, Collins states that is unaware of any counterfeit parts or defects in the ACES II ejection seat or any component thereof.

177.    Upon information and belief, this duty owed by COLLINS flowed to and affected 1st Lt David J. Schmitz as a pilot of an F-16 aircraft.

**ANSWER:**    Paragraph 177 calls for Collins to admit or deny a legal conclusion, for which no response is required. To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 177.

178. At the aforesaid date, time, and place, the COLLINS breached the duty of care owed to the Plaintiff and was negligent, negligent per se, reckless, willful, wonton and grossly negligent in one or more of the following particulars:

a.  Negligently and recklessly installed a defective ejection seat in 1st Lt David J. Schmitz's F-16 aircraft;

b.  Negligently and recklessly breached its contractual duties with LOCKHEED, and/or the U.S. Government, by installing defective DRS units in ACES II ejection seats;

c.  Negligently and recklessly breached federal laws, statues, regulations, ordinances, standards, bid specifications, contracts and other applicable requirements related to quality control standards required of government contractors by installing defective DRS units in ACES II ejection seats;

d.  Negligently and recklessly breached quality control industry standards by installing defective DRS units in ACES II ejection seats;

e.  Negligently and recklessly permitted its agents, contractors and subcontractors to manufacture DRS units with counterfeit parts;

f.  Negligently and recklessly permitted its agents, contractors and subcontractors to manufacture defective DRS units;

g.  Negligently and recklessly permitted its agents, contractors and subcontractors to install a defective DRS in 1st Lt David J. Schmitz's ejection seat;

m.  Negligently and recklessly produced a defective DRS;

n.  Negligently and recklessly failed to properly inspect the defective DRS and its component parts to ensure it was safe for use;

o.  Negligently and recklessly failed to properly supervise and audit the contractor assembling and inspecting the defective DRS and its component parts;

p.  Negligently and recklessly failed to provide proper technical training of persons assembling, inspecting, repairing and or maintaining the defective DRS and its component parts;

q.  Negligently and recklessly withheld critical information regarding the lack of reliability of the DRS from the USAF;

r.  Negligently and recklessly withheld critical information from the USAF that the DRS contained counterfeit parts;

s.     Negligently and recklessly withheld critical information regarding DRS unreliability from F-16 pilots;

**ANSWER:**     Collins denies the allegations of Paragraph 178, including all subparts thereto identified as "a" through "g" and "m" through "s."

179.     As a direct and proximate result of Defendants' conduct, Plaintiff's Decedent was injured and killed and Plaintiff was harmed and suffered the damages set forth herein.

**ANSWER:**     Colins denies the allegations of Paragraph 179.

## COUNT VIII
### Death by Wrongful Act, S.C. Code §15-51-10 by RISI

Count VIII of the Plaintiff's Complaint are not directed against Collins.  As such, Collins does not respond to Paragraphs 180 through 198. To the extent that any such response is required, Collins denies the allegations.

## COUNT IX
### Spousal Damages Pursuant to S.C. Code Annotated §15-75-20

199.     All other paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

**ANSWER:**  As its response to Paragraph 199, Collins restates its responses to all other paragraphs of the complaint, as though fully set forth herein.

200.     Decedent's spouse, Valerie C. Schmitz, suffered injuries and losses separate and apart from those suffered by her husband.

**ANSWER:**     Collins lacks sufficient information to either admit or deny the allegations of Paragraph 200 and on that basis denies same.

201.     Pursuant to South Carolina Code Annotated §15-75-20, as a widowed spouse Plaintiff has, individually and in her own right, a separate cause of action for her own loss of society, companionship, consortium, services, love, affections, assistance, guidance, help, care, and loss of marital relations, as well as for her personal grief, distress, emotional distress, pain and suffering, physical suffering and illness, financial losses and other losses, and other losses and damages separate and distinct from that of her husband.

**ANSWER:**    Paragraph 201 calls for Collins to admit or deny a legal conclusion, for which no response is required.  To the extent that any response is required, Collins admits only those duties imposed under the applicable law as determined by the court and denies any remaining allegations of Paragraph 201.

202.    Plaintiff's separate injuries and damages were caused by the Defendants, and each of them, and were the proximate result of the negligent, grossly negligent, reckless wanton and willful acts and omissions of Defendants', and each of them.

**ANSWER:**    Collins denies the allegations of Paragraph 202.

### COUNT X
### Punitive Damages Under the Noneconomic Damages Award Act of 2005

203.    All other paragraphs of this Complaint are incorporated by reference as though fully set forth herein.

**ANSWER:**    As its response to Paragraph 203, Collins restates its responses to all other paragraphs of the complaint, as though fully set forth herein.

204.    Pursuant to the South Carolina Code of Laws §15-32-200, et seq., Plaintiff is entitled to claim punitive damages.

**ANSWER:** Paragraph 204 calls for Collins to admit or deny a legal conclusion, for which no response is required.  To the extent that any response is required, Collins denies the allegations of Paragraph 204.

205.    Defendants' behavior as set forth herein and as discovery in this litigation and other federal criminal and civil investigations will further prove, amounts to willful, wanton, egregious, outrageous and actionable behavior, which was knowingly and intentionally undertaken and is dangerous and deadly.

**ANSWER:**    Collins denies the allegations of Paragraph 205.

206.    Pursuant to the statute Plaintiff may not request an amount, and therefore only respectfully requests all punitive amounts allowed by law.

**ANSWER:**    Paragraph 206 calls for Collins to admit or deny a legal conclusion, for which no response is required.  To the extent that any response is required, Collins denies the allegations of Paragraph 206.

207.    However, in the event the jury shall return a punitive damages verdict in excess of the greater of three times the amount of compensatory damages to each claimant entitled thereto or the sum of five hundred thousand dollars, the Plaintiff requests the court consider, as expressly allowed by statute, whether Defendants' conduct together with the high likelihood of injury resulting from the conduct, was known or approved by Defendants' managing agent director, officer or the person; making policy decisions on behalf of Defendants, or whether Defendants' actions could subject Defendants to conviction of a felony and those actions and course of conduct of Defendants are proximate causes of Plaintiff's damages, and in such case the punitive damages many not exceed the greater of four times the amount of compensatory damages to each claimant or two million dollars per claimant.

**ANSWER:** Paragraph 207 calls for Collins to admit or deny a legal conclusion, for which no response is required.  To the extent that any response is required, Collins denies the allegations of Paragraph 207.

208.    As a federal criminal investigation into this accident is ongoing, Plaintiff requests the application of all such punitive provisions.  Should Defendants be convicted of or plead guilty to a felony arising out of the same acts or course of conduct complained of herein and that act or course of conduct is the proximate cause of Plaintiff's damages, pursuant to §15-32-530(c)(2), there shall be no cap on punitive damages and Plaintiff requests to amend and supplement this Complaint and these claims should Defendants so plead or be
convicted so as to recover unlimited punitive damages.

**ANSWER:**    Paragraph 208 calls for Collins to admit or deny a legal conclusion, for which no response is required.  To the extent that any response is required, Collins denies the allegations of Paragraph 208.

## **DEMAND FOR JURY TRIAL**

Collins demands a trial by jury of all issues triable as of right.

## **GENERAL DENIAL**

Colins denies all allegations of Plaintiff's Complaint that are not specifically admitted hereinabove, including but not limited to Plaintiff's demands and prayers for relief.

**AFFIRMATIVE DEFENSES**

In further response to the Plaintiff's Complaint, Collins raises, asserts, and preserves the following affirmative defenses:

**FIRST AFFIRMATIVE DEFENSE**

Plaintiff fails, in whole or in part, to state a cause of action upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

Plaintiff and the alleged beneficiaries of the decedent's estate may lack capacity and/or standing to bring this action.

**THIRD AFFIRMATIVE DEFENSE**

Plaintiff's claims against Collins are barred by one or more of the following defenses: the government contractor defense as set forth in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the doctrine of Activity Incident to Military Service as set forth in *Feres v. United States*, 340 U.S. 135 (1950), the Political Question Doctrine as set forth in *Taylor v. Kellogg Brown & Root Services, Inc.*, 658 F.3d 402 (4th Cir. 2011) and/or Contractor Derivative Immunity as set forth in *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18 (1940).

**FOURTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint may be barred, in whole or in part, by the applicable statute of limitations.

**FIFTH AFFIRMATIVE DEFENSE**

Plaintiff's Complaint may be barred, in whole or in part, by the applicable statute of repose.

## SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part and/or preempted by federal law.

## SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's action may be governed, in whole or in part, by the laws of jurisdictions other than South Carolina.

## EIGHTH AFFIRMATIVE DEFENSE

Collins denies that its conduct was a cause or proximate cause of the Plaintiff's alleged injuries and damages. Further, Plaintiff's alleged damages, if any, were caused, in whole or in part, by the acts and/or omissions, including, but not limited to, unusual negligent acts or willful acts and/or omissions by other persons or entities, named or unnamed, over whom Collins had no control or right to control, and those acts and/or omissions were the sole proximate cause or an intervening or superseding cause of any injuries or damages sustained by Plaintiff. At this point, Collins has not had the benefit of discovery and does not specifically know the identity of any such third parties and will amend this defense to identify same when discovered.

## NINTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, were caused by the acts or omissions of other persons or entities for which Collins is not liable or responsible. In the event Collins is found liable to Plaintiff, which is expressly denied, Collins may be entitled to indemnification, contribution or apportionment of liability and fault pursuant to applicable law and reserves its right to seek same.

## TENTH AFFIRMATIVE DEFENSE

Claims and recovery by the Plaintiff may be barred, in whole or in part, under the applicable laws governing comparative fault, contributory negligence, and/or assumption of the risk due to the acts or omissions of other persons or entities for which Collins is not liable or responsible.

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, may have been directly and proximately caused by an unavoidable accident or act of God for which Collins is not liable.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint should be dismissed on the ground that Plaintiff has failed to join necessary and indispensable parties.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, may be barred and/or limited under applicable law.

## FOURTEENTH AFFIRMATIVE DEFENSE

Based upon the state of scientific, industrial, technological, and military knowledge existing at the time, the design of any and all Collins products were reasonably safe for the subject aircraft's normal and foreseeable use and operation at all relevant times, or in light of existing and reasonably available scientific, industrial, and technological knowledge.  Accordingly, Plaintiff's claims are barred, in whole or in part, because Collins's product design was consistent with or exceeded the generally recognized and accepted technological, scientific, industrial, and military state-of-the-art at the time of its design, testing, manufacture, and sale.

## FIFTEENTH AFFIRMATIVE DEFENSE

The products allegedly sold by Collins were intended for and sold to a knowledgeable and sophisticated user over whom Collins had no control.

## SIXTEENTH AFFIRMATIVE DEFENSE

If Plaintiff was damaged by products originally designed, prepared, tested or sold by Collins, which Collins expressly denies, those products were subsequently altered, modified, damaged, overhauled or misused by persons and/or entities other than Collins, and over whom Collins had no control or right of control, and such change, alteration, modification, damage,

34

overhaul or misuse proximately caused and contributed to this accident and the resulting damages complained of, if any.

### SEVENTEENTH AFFIRMATIVE DEFENSE

The benefits and/or utility of the design of the subject aircraft and each component thereof outweigh the risks associated therewith, if any.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Collins complied with all applicable codes, standards, and regulations of the United States and agencies thereof.

### NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's damages, if any, may be barred and/or limited under applicable law due her failure to mitigate her damages.

### TWENTIETH AFFIRMATIVE DEFENSE

Plaintiff's claims may be barred in whole or in part by *res judicata*, collateral estoppel, laches, waiver, and/or unclean hands.

### TWENTY-FIRST AFFIRMATIVE DEFENSE

Some or all of Plaintiff's claims may be barred in whole or in part because Plaintiff may have already received full satisfaction and/or compensation for the injuries and damages, if any, and the claims may be barred by Plaintiff's prior release of claims and/or accord and satisfaction with any entity.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

An award or judgment rendered in favor of Plaintiff must be reduced by the amount of benefits Plaintiff received, or is entitled to receive, from any source as a result of the deaths of their decedent.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

Recovery is barred or should be reduced by the applicable law because of the contributory negligence, contributory fault, and/or assumption of the risk by the Plaintiff's Decedent David J. Schmitz.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims are preempted by federal law, and the aircraft components at issue were certified as safe and airworthy by the United States Department of Defense, the United States Air Force, the Federal Aviation Administration or other department or divisions of the Government of the United States.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, to the extent that adequate warnings were provided to Plaintiff's Decedent David J. Schmitz, and/or other intermediaries or third parties regarding the risks and dangers associated with the operation and/or use of the subject aircraft and any Collins component product.  Any duty on the part of Collins to warn Plaintiff's Decedent David J. Schmitz of the risks and dangers associated with such operation and/or use of the subject aircraft and any Collins component product, if any such duty exists, was satisfied through the information and warnings available to Plaintiff's Decedent David J. Schmitz, or other intermediaries or third parties.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, by the learned intermediary, knowledgeable user, and/or sophisticated user doctrines. At all relevant times herein, other persons or entities were in the position of learned intermediaries, fully knowledgeable and informed with respect to the risks and benefits of the use, operation and/or capabilities of the subject aircraft at issue in this action. Further, Plaintiff's decedent David. C. Schmitz was a

36

knowledgeable and/or sophisticated end user of the subject aircraft, possessing special knowledge, vocation, and/or expertise concerning the subject aircraft and its associated capabilities and risks, and accordingly, need not have been warned of those risks.

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

While denying that Plaintiff is entitled to any relief whatsoever, if Collins is required to pay a monetary award to Plaintiff, Collins claims a set-off against any monies received by Plaintiff for their alleged injuries or damages, including, but not limited to, any insurance proceeds.

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

To the extent that the laws of other jurisdictions apply, Collins invokes each and every constitutional and statutory defense available to it under the constitutions, statutes, civil or other law of each of the other forty-nine states, the District of Columbia, the territories and possessions of the United States, and/or applicable foreign law. These laws specifically include, but are not limited to, provisions relating to due process, access to the courts, statutes of limitations and repose, and limitations on compensatory, non-economic, and punitive damages.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

Collins hereby adopts and incorporates by reference any affirmative defense asserted by any other defendants to this action, to the extent such affirmative defense applies to Collins, as if fully set forth herein.

## **RESERVATION OF FURTHER DEFENSES**

Collins reserves the right to amend its Answer and to assert any and all additional defenses as may be revealed by further investigation, discovery, and determination of the substantive law that will govern this case.

Respectfully submitted,

**Smith, Robinson, Holler,**
**Dubose & Morgan, L.L.C.**

s/David C. Holler
David C. Holler, Bar #064312
126 North Main Street
Post Office Box 580
Sumter, South Carolina 29151
(803) 778-2471
davidholler@smithrobinsonlaw.com

Nicholas C. Bart
Mark S. Susina
**Fitzpatrick & Hunt, Pagano, Aubert, LLC**
10 S. lasalle Street Suite 3400
Chicago, IL 60603
(312) 728-4901 or (312) 728-4908
Nick.bart@fitzhunt.com
Mark.susina@fitzhunt.com

**Attorneys for Defendant Rockwell Collins, INC**