IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Valerie C. Schmitz, *individually and as Personal Representative of the Estate of David J. Schmitz*, ) ) ) ) Plaintiff, ) ) v. ) ) Lockheed Martin Corporation; ) Rockwell Collins, Inc.; Teledyne Risi, ) Inc., *d/b/a* Teledyne Electronic Safety ) Products; Teledyne Risi Inc., *d/b/a* ) Teledyne Energetics, ) ) Defendants. ) | Case No. 3:22-cv-02419-JDA<br><br>**OPINION AND ORDER** |

This case is before the Court on Plaintiff's motion "to compel the fact witnesses of the United States [G]overnment to answer questions referring to reports in which the deponent is listed as an author or reviewer, and/or explain the contents of technical writings." [Doc. 121 at 1.] For the reasons stated herein, the Court grants the motion to the extent consistent with this Order.

## BACKGROUND

The present case concerns the alleged wrongful death of David J. Schmitz ("Schmitz"), a first lieutenant in the United States Air Force ("USAF"). [Doc. 54 at 3 ¶ 7.] On June 30, 2020, Schmitz piloted an F-16 fighter jet at Shaw Air Force Base. [*Id.* ¶¶ 7, 9.] He "suffered grievous injuries" and passed away because his ejection seat "failed to function as designed." [*Id.* ¶ 7.] USAF determined that the Digital Recovery Sequencer ("DRS") in the ejection seat "malfunctioned, which caused him to remain strapped in his

ejection seat without a parachute, and consequently, slam into the ground." [*Id*. at 6 ¶ 28.]  The parties dispute the cause of the DRS malfunction.  [Doc. 121 at 1.]

On August 14, 2025, Plaintiff filed a motion to compel deposition testimony.  [Doc. 121.]  To date, Plaintiff has conducted several depositions of USAF personnel.  [*Id.* at 2.]  Recurrently, Plaintiff's counsel has "asked [a Government deponent] to explain or define terms or concepts specifically found in [a] report in which the deponent is listed as an author or reviewer."  [*Id.*]  "The [G]overnment attorney [has] then instruct[ed] the witness not to answer the question" because it elicits expert testimony privileged under the Department of Defense ("DoD")'s *Touhy* regulations.  [*Id.*]  Examples of such questions have included, "What is capacitive coupling?" [Doc. 121-1 at 3 (130:12–13)][1] and "What is a driver-receiver pair device?" [Doc. 121-2 at 3 (39:7–8)].  Plaintiff argues such questions do not call for expert testimony because "the testimony sought is based on the deponent's writings, understandings, or observations of equipment."  [Doc. 121 at 3.]

In light of Plaintiff's motion to compel, the Court directed the Clerk to add USAF and DoD as interested parties in this case.  [Doc. 124.]  On September 5, 2025, USAF and DoD (collectively, the "Government") filed a response in opposition to the motion.  [Doc. 125.]  Principally, the Government argues that "Plaintiff . . . seeks to unilaterally expand the limits of fact testimony . . . to elicit opinion and expert testimony from . . . fact witnesses, which is not allowed" under DoD's *Touhy* regulations.  [*Id.* at 2.]  In addition, the Government contends that the deposition questions in dispute are "unreasonably

---

[1] After discussing the Government attorney's objection in this instance, Plaintiff's counsel asked the following question: "Based on your observation, . . . did you see a configuration [of the DRS] that could cause capacitive coupling . . . ?" [Doc. 121-1 at 7 (134:19–24)].

2

cumulative or duplicative" because "Plaintiff can ask her own expert witnesses these types of . . . questions." [*Id*. at 4.]

Plaintiff filed a reply on September 12, 2025. [Doc. 126.] Plaintiff acknowledges the Government's right "to restrict its employees from offering expert testimony" but "asserts that the testimony in question is not expert testimony." [*Id*. at 1; *see also id*. at 2 ("The reports have been provided through the [*Touhy*] process, and depositions of the authors and contributors are intended to clarify the relevant observations, tests, and wording found in those reports.").]

The parties have not been able to resolve the discovery dispute under Local Civil Rule 7.02, D.S.C. [*See* Doc. 121 at 1.] Accordingly, the motion is ripe for review.[2]

## APPLICABLE LAW

**Scope of Discovery and Motions to Compel**

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003). Pursuant to Rule 26(b)(1) of the Federal Rules of Civil Procedure,

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

---

[2] On September 18, 2025, the parties filed their latest joint status report. [Doc. 127.] Therein, the parties report that depositions of Government employees are continuing. [*Id*. at 5.]

3

Federal district courts are vested with broad discretion in resolving discovery disputes and deciding whether to grant a motion to compel. *Erdmann v. Preferred Rsch., Inc. of Ga.*, 852 F.2d 788, 792 (4th Cir. 1988); *Columbus–Am. Discovery Grp. v. Atl. Mut. Ins.*, 56 F.3d 556, 568 n.16 (4th Cir. 1995) ("The scope and conduct of discovery are within the sound discretion of the district court.").

**Objections to Deposition Testimony**

Under Rule 30(a)(1) of the Federal Rules of Civil Procedure, "[a] party may, by oral questions, depose any person, including a party, without leave of court," subject to a few exceptions outlined in Rule 30(a)(2). If a party mounts an objection during a deposition, "whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition," the objection "must be noted on the record, but the examination still proceeds . . . ." Fed. R. Civ. P. 30(c)(2). Relevant here, "[a] person may instruct a deponent not to answer only when necessary *to preserve a privilege*, to enforce a limitation ordered by the court, or to present a motion [to terminate or limit a deposition on the ground of bad faith or unreasonable burden on the deponent or party]." *Id*. (emphasis added).

Likewise, according to Local Civil Rule 30.04(C), D.S.C.,

> Counsel shall not direct or request that a witness not answer a question, unless that counsel has objected to the question on the ground that the answer is protected by a privilege or a limitation on evidence directed by the court . . . . Counsel directing that a witness not answer a question on those grounds or allowing their clients to refuse to answer a question on those grounds shall move the court for a protective order under Fed. R. Civ. P. 26(c) or 30(d)(3) within seven (7) days of the suspension or termination of the deposition. Failure to timely file such a motion will constitute waiver of the objection, and the deposition may be reconvened.

4

(footnote omitted).  For purposes of the Rule, "'privilege' includes, but is not limited to, attorney-client privilege, work product protection, and trade secret protection." *Id.* n.18.

**Privilege of Nondisclosure by Executive Departments**

In *U.S. ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951), the Supreme Court held that Department of Justice Order No. 3229 constituted a valid exercise by the Attorney General of his authority under 5 U.S.C. § 22 to "prescribe regulations not inconsistent with law for the custody, use, and preservation of the records, papers, and property appertaining to the Department of Justice."  *Touhy*, 340 U.S. at 467 (internal quotation marks omitted).  Under *Touhy*, then, the Department of Defense may promulgate regulations to control the release of official information in litigation.[3]

---

[3] In 1958, Congress amended 5 U.S.C. § 22.  Wright and Miller, 26A Fed. Prac. & Proc. Evid. § 5682 (1st ed.).  As amended, 5 U.S.C. § 301 states:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. *This section does not authorize withholding information from the public or limiting the availability of records to the public.*

(emphasis added).  Many courts refer to the amended statute's last sentence to conclude that "the [privilege of nondisclosure by executive departments] is defunct."  Wright and Miller, 26A Fed. Prac. & Proc. Evid. § 5682 (1st ed.); *see id.* n.146 (collecting cases).

However, the Fourth Circuit still views *Touhy* as good law despite the statute's amendment.  *See Smith v. Cromer*, 159 F.3d 875, 878 (4th Cir. 1998) ("Any doubt as to the validity of the [Department of Justice] regulation's requirement of prior approval is foreclosed by the Supreme Court's decision in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951) . . . . Appellees may not be forced to comply with the subpoenas if a valid regulation required them not to comply. . . .  We are convinced, both by statute and precedent, that [the Department of Justice regulations at issue are] valid insofar as [they] direct[] Appellees not to testify without prior approval of the proper Department official.").

Regulations applicable to the production and disclosure of information by the Department of Defense appear in 32 C.F.R. Part 97, titled "RELEASE OF OFFICIAL INFORMATION IN LITIGATION AND PRESENTATION OF WITNESS TESTIMONY BY DOD PERSONNEL." Section 97.4 ("Policy") outlines a general policy in favor of reasonable disclosure:

> The Department of Defense generally should make official information reasonably available for use in Federal, State, and foreign courts and other adjudicative bodies if the information is not classified, privileged, or otherwise protected from public disclosure.

Sections 97.7 through 97.11 govern the procedures applicable to litigation requests or demands. Relevant here, § 97.11 provides:

> (a)    Personnel may not present expert or opinion testimony involving official information, except when:
>
> (1) The testimony is presented on behalf of the United States, a Federal agency, or any party represented by the Department of Justice.
>
> (2) The chief legal advisor of the DoD Component with primary equity has granted special written approval upon a showing of exceptional need or unique circumstances, but only if the anticipated testimony is not adverse to the interests of the DoD or the United States and is presented at no expense to the Government.
>
> (b)    If a court orders the presentation of testimony disallowed by paragraph (a) of this section, personnel must respectfully decline to comply with the court's order unless the chief legal advisor directs otherwise.

Department of Defense Directive ("DoDD") 5405.2, Paragraph 3.5, contains nearly identical language. Moreover, Air Force Instruction ("AFI") 51-301, Paragraph 3.13.2, provides: "As a general rule, Covered Personnel do not provide opinion or expert testimony in litigation concerning Air Force or DoD Official Information, subjects, or

6

activities, except on behalf of the United States or for a party that DoJ represents." Paragraph 3.13.2.1 then outlines certain other exceptions where a unique circumstance or exceptional need exists.

## **DISCUSSION**

The parties assume the validity of the Department of Defense regulations and policies. [*See* Doc. 125 at 2 ("There is no dispute that the Air Force is governed by the Department of Defense's *Touhy* regulations found in 32 C.F.R §§ 97.1-.6, Department of Defense Directive 5405.2, and its own *Touhy* regulations found in Air Force Instruction ('AFI') 51-301."); Doc. 126 at 1 (acknowledging the Government's right "to restrict its employees from offering expert testimony").] That said, the parties disagree as to whether the deposition questions at issue elicit expert testimony triggering a DoD privilege. As previously noted, Plaintiff argues that a lay Government witness may define certain technical terms appearing in reports that the witness personally authored or reviewed prior to the onset of litigation. The Government counters that the testimony at issue requires highly specialized knowledge and is therefore barred by DoD's *Touhy* regulations. Based upon the foregoing authority, the Court agrees with Plaintiff and grants the motion to compel.[4]

---

[4] Plaintiff's motion to compel primarily addresses future depositions. [*See* Doc. 121 at 3 ("Depositions of the Navy personnel will be taken in the near future. Additionally, Air Force personnel who managed and oversaw the DRS program will be deposed. Based on the disagreement amongst counsel, this issue will continue to persist.").] Accordingly, the Court need not address whether the Government's counsel waived objection to certain deposition questions in *past* depositions under Local Civil Rule 30.04(C), D.S.C. This matter comes before the Court on a motion to compel, not a motion for protective order. As such, the Court finds Local Rule 30.04 of limited utility.

32 C.F.R. 97, DoDD 5405.2, and AFI 51-301 do not specifically define "expert testimony." *See generally* 32 C.F.R. § 97.3 ("Definitions"); DoDD 5405.2, Paragraph G.2 ("Definitions"); AFI 51-301, Paragraph 3.3 ("Terms"). However, regulations are subject to principles of statutory construction, *see Morris v. Nielson*, 374 F. Supp. 3d 239, 249 (E.D.N.Y. 2019) ("When courts determine the meaning of a regulation, they apply the same techniques as in the analogous context of statutory construction." (internal quotation marks omitted)), and courts should give legal terms their established meaning, *see FAA v. Cooper,* 566 U.S. 284, 292 (2012) ("[I]t is a 'cardinal rule of statutory construction' that, when Congress employs a term of art, 'it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken.'").

To this end, courts generally define expert testimony by reference to Rule 26 of the Federal Rules of Civil Procedure and Rules 701 and 702 of the Federal Rules of Evidence. Under Rule 26 of the Federal Rules of Civil Procedure, the term "expert" "refer[s] to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters." Fed. R. Civ. P. 26(a)(2) advisory committee's note to the 1993 amendment.

The Federal Rules of Evidence "do[] not distinguish between expert and lay *witnesses*, but rather between expert and lay *testimony*." Fed. R. Evid. 701 advisory committee's note to the 2000 amendment. Accordingly, a witness with expert qualifications may testify in a lay capacity, so long as he does not offer opinions based on scientific, technical, or other specialized knowledge. *See United States v. Breland*, 366 F. App'x 548, 552 (5th Cir. 2010) ("Henry's introductory statements regarding her

8

experience and training were used to establish her *personal knowledge* of the FEMA policies and procedures about which she later testified, and personal knowledge is a mandatory underpinning of lay witness testimony." (emphasis added)); *Gomez v. Rivera Rodriguez*, 344 F.3d 103, 113 (1st Cir. 2003) ("[The Rule 26] definition [of expert] does not encompass a percipient witness who happens to be an expert. If the individual is not providing testimony under Rule 702, he is not an expert witness for the purpose of Rule 26.").

To determine whether a witness with specialized knowledge testifies in a lay capacity, courts generally draw a distinction between (1) testimony derived from direct participation in the events underlying the litigation and (2) opinion testimony prepared in anticipation of the litigation. *Compare Slaby v. Holder,* No. 1:12-cv-1235 (AJT/IDD), 2013 WL 12146519, at *1 (E.D. Va. Aug. 5, 2013) ("As direct participants in the underlying events giving rise to plaintiff's claim, any opinions they held at the time would be imbedded in historical fact, not in assessments made for the purposes of the litigation."), *and Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 501 (D. Md. 1997) ("To the extent that the source of the facts which form the basis for a treating physician's opinions derive from information learned during the actual treatment of the patient—as opposed to being subsequently supplied by an attorney involved in litigating a case involving the condition or injury—then no Rule 26(a)(2)(B) statement should be required."), *and Gomez*, 344 F.3d at 113 ("Like the testimony of a treating physician, Piñot's testimony would have been based on personal knowledge acquired before any litigation had begun. He was an actor with regard to the occurrences from which the tapestry of the lawsuit was woven, and the defendants sought to present his testimony on that basis."), *with McDowell v. Price*, No.

9

4:08CV03979 SWW/HDY, 2011 WL 13233781, at *3–4 (E.D. Ark. Feb. 28, 2011) (determining that a deponent testified in an expert capacity where the litigation commenced in 2008, the deponent was "retained [in 2009] to review certain Plan documents and . . . calculate . . . benefits," and "the upshot of [the] testimony was to allow the plaintiffs to probe the basis of [the deponent's] opinions as to the amount of benefits supposedly owed them and the methodology he used in arriving at that number"). *Cf.* AFI 51-301, Paragraph 3.14 ("The Air Force does not usually consider course of treatment testimony by a treating medical provider to be expert or opinion testimony. A treating medical provider may testify as to his or her examination, treatment, and prognosis for a patient.").

When a witness offers lay testimony based upon personal knowledge, he may provide definitions of certain occupational terms. *See United States v. McMillan*, 600 F.3d 434, 456 (5th Cir. 2010) ("Although [the witness] defined certain accounting terms during the course of his testimony, he provided factual information about the circumstances of the case . . . ."); *United States v. Georgiou*, 742 F. Supp. 2d 613, 631–32 (E.D. Pa. 2010) ("[T]he fact that Koster defined certain terms does not render his lay testimony impermissible expert testimony. . . . Koster provided factual information from his investigation of the stock transactions in this case and summarized that information in his slides and on the witness stand. His opinions were based on the factual information which he perceived during his investigation."); *United States v. Rigas,* 490 F.3d 208, 224 (2d Cir. 2007) ("A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as

long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . .'" (citation omitted)).

In the present case, Plaintiff's counsel seeks to elicit facts, not opinions, from the Government deponents. *See* Fed. R. Evid. 701 (barring lay "testimony in the form of an *opinion* . . . based on scientific, technical, or other specialized knowledge" (emphasis added)). Indeed, questions such as "What is capacitive coupling?" [Doc. 121-1 at 3 (130:12–13)] and "What is a driver-receiver pair device?" [Doc. 121-2 at 3 (39:7–8)] generate definitions describing objective phenomena. Moreover, any opinions expressed in the reports "would be imbedded in historical fact" by virtue of the Government deponents' direct participation in the reports' preparation. *Slaby,* 2013 WL 12146519, at *1.

Further, Plaintiff's disputed deposition questions do not purport to elicit testimony prepared in anticipation of litigation. Rather, the reports in question relate to DRS testing conducted by USAF and the United States Navy prior to the commencement of Plaintiff's suit. [*See* Doc. 121 at 2–3 ("The [G]overnment witnesses were involved in the investigation that followed the crash or in the development and management of the DRS program."), 3 ("The United States Navy did extensive testing and investigation into [the issue of whether components of the DRS were counterfeit] and issued written reports and PowerPoint presentations."); Doc. 54 at 7–8 ¶¶ 41–46 (describing USAF efforts to conduct quality evaluation testing of DRS units in December 2017 and August 2018), 9 ¶¶ 51–52 (describing research from USAF's Aircraft Accident Investigation Board after Schmitz's demise); 9–11 ¶¶ 54, 57–65, 69 (describing further investigative work of the Air Force Research Laboratory).] Because the disputed deposition questions reflect the

Government deponents' *direct participation* in the events underlying the litigation [*see* Doc. 121 at 3 ("[Deponents'] testimony is based on their firsthand work in either the investigation or management of the DRS.")], they are permissible under DoD's *Touhy* regulations.

In sum, Plaintiff may ask the Government deponents to offer definitions of occupational terms appearing in their reports and/or restate opinions "*held at the time*" of authorship, as such opinions comprise historical fact. *Slaby,* 2013 WL 12146519, at *1 (emphasis added); *see also McMillan*, 600 F.3d at 456; *Georgiou*, 742 F. Supp. 2d at 631–32.[5]

## CONCLUSION

Based on the foregoing, Plaintiff's motion to compel [Doc. 121] is GRANTED. Specifically, Plaintiff may ask the Government deponents to offer definitions of occupational terms appearing in their reports and/or restate opinions the Government deponents held at the time of authorship. That said, the Court acknowledges the inherent difficulty of predicting future testimony. To this end, the Court reminds the Government that it may note its objections on the record consistent with Rule 30(c)(2) of the Federal Rules of Civil Procedure and Local Civil Rule 30.04, D.S.C.

IT IS SO ORDERED.

---

[5] As a separate matter, the Government appears to argue that the deposition testimony would be unnecessarily duplicative. [Doc. 125 at 4.] However, given the deponents' direct participation in the reports' preparation, the Court finds that the Government's concerns are overridden by DoD's general policy in favor of reasonable disclosure. *See* 32 C.F.R. § 97.4 ("The [DoD] generally should make official information reasonably available for use in Federal, State, and foreign courts and other adjudicative bodies if the information is not classified, privileged, or otherwise protected from public disclosure.").

s/ Jacquelyn D. Austin<br>United States District Judge

November 4, 2025
Columbia, South Carolina